Paul H. Burleigh, Bar No. 112512
pburleigh@klinedinstlaw.com
KLINEDINST PC
777 S. Figueroa St., Suite 4000
Los Angeles, California 90017
(213) 442-7000/FAX (213) 406-1101

Ronald P. Schiller (*pro hac vice* motion to follow)
rschiller@hangley.com
Daniel J. Layden (*pro hac vice* motion to follow)
dlayden@hangley.com
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania  19103
(215) 568-6200/FAX (215) 568-0300

Attorneys for Plaintiff
ARCH SPECIALTY INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>BEACON HEALTHCARE SERVICES, INC. D/B/A NEWPORT BAY HOSPITAL,<br><br>        Defendant. | Case No. 8:22-cv-00305<br><br>**COMPLAINT** |

1.      In this insurance action, Arch Specialty Insurance Company ("Arch") seeks a declaration that, under the healthcare professional liability policy it issued to Beacon Healthcare Services, Inc. d/b/a Newport Bay Hospital ("Beacon"), Arch does not have a duty to cover Beacon for any amounts for defense or indemnity in excess of $1 million in the underlying elder abuse lawsuit, pursuant to the policy's eroding sub-limit for "abuse or molestation" claims.

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

2.      Arch is providing a defense under reservation of rights to Beacon in the underlying lawsuit captioned *Zhen Cang Chen et al. v. Beacon Healthcare Services, Inc. d/b/a Newport Bay Hospital et al.*, Case No. 30-2019-01065248-CU-PO-CJC, pending in the Superior Court of California, County of Orange ("*Chen* Lawsuit"). In that case, underlying plaintiffs seek damages arising out of their elderly father's death from a choking incident while he was a resident at Beacon's in-patient facility.

3.      Plaintiffs in the *Chen* Lawsuit assert a claim under California's "Elder Abuse and Neglect" statute and allege Beacon's conduct constituted "abuse of an elder or a dependent adult" and "amounted to physical abuse."

4.      Under the plain language of the policy issued by Arch, coverage for "abuse or molestation" claims, such as the *Chen* Lawsuit, is sub-limited by endorsement to $1 million, inclusive of defense expenses.  "Abuse or molestation" under the policy "includes but is not limited to" sexual abuse, which is not at issue here, or physical and other abuse, such as that alleged in the *Chen* Lawsuit. Accordingly, Arch seeks a declaration that its duty to pay amounts in defense and/or any indemnity of Beacon ends when such amounts exhaust the policy's eroding $1 million sub-limit.

5.      Arch also seeks a declaration that it does not have a duty to defend or indemnify Beacon in the *Chen* Lawsuit under the policy's umbrella coverage, pursuant to that coverage part's "abuse or molestation" exclusion.  "Abuse or molestation" is defined the same as under the policy's primary coverage and thus, as noted above, the underlying Elder Abuse cause of action and allegations fall within the definition.  (The above-referenced endorsement providing limited coverage for such claims does not also apply to the umbrella coverage part.)  Accordingly, the "abuse or molestation" exclusion applies to bar umbrella coverage.

## JURISDICTION AND VENUE

6.      Plaintiff Arch Specialty Insurance Company is an insurance company formed under the laws of the State of Missouri and has its principal place of

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

1  business in New Jersey.

2      7.      Defendant Beacon Healthcare Services, Inc. d/b/a Newport Bay

3  Hospital is a private corporation formed under the laws of California and has its

4  principal place of business in Newport Beach, California.

5      8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.

6  § 1332(a) because the dispute is between citizens of different states and the amount

7  in controversy exceeds $75,000, exclusive of interest and costs.

8      9.      Venue in this district is appropriate because the Defendant resides in

9  this district and a substantial part of the events giving rise to this action occurred

10 here.  28 U.S.C. § 1391(b).

11                        **FACTUAL ALLEGATIONS**

12      **A.      The Underlying *Chen* Lawsuit**

13      10.      The complaint in the underlying *Chen* Lawsuit was filed on April 22,

14 2019 in the Superior Court of California, County of Orange.  Underlying plaintiffs

15 are decedent Zhen Cang Chen, decedent's successor in interest and son You Jian

16 Chen, and decedent's daughter Youli Chen Yue.  (A true and correct copy of the

17 underlying complaint is attached hereto as Exhibit A.)

18      11.      Plaintiffs claim that the decedent, Mr. Chen was an elderly resident at

19 Beacon's in-patient psychiatric facility in October 2018 when he fatally choked on a

20 piece of food while under Beacon's care.  The complaint states causes of action

21 against Beacon for Elder Abuse and Neglect, under California's Elder Abuse and

22 Dependent Adult Civil Protection Act, *Welf. & Inst. Code* §§ 15600, *et seq.*, and

23 Wrongful Death.

24      12.      Specifically, underlying plaintiffs allege that when Mr. Chen was

25 admitted on October 22, 2018, Beacon's staff was informed of his history of

26 difficulty chewing and swallowing among other conditions.  Plaintiffs further allege

27 that Beacon's staff documented Mr. Chen's required aspiration precautions,

28 including a mechanical soft diet, assistance when eating, and ensuring that he

3

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

properly chewed and swallowed his food before allowing him to leave the dining table.

13.     On October 25, 2018, Beacon's staff found Mr. Chen pale, unresponsive, and slumped over the dining table.  Plaintiffs allege that Beacon's staff had disregarded the aspiration precautions by failing to supervise Mr. Chen while he ate, and rather than check his airway for food when he was found unresponsive, in accordance with the precautions, Beacon's staff pushed him in his wheelchair back to his room, tried to arouse him with verbal and painful stimuli, placed him on a nonrebreather mask, and eventually attempted CPR and called 911. Mr. Chen was taken to the hospital, where personnel found and removed a solid piece of food that was blocking his airway.  The underlying plaintiffs alleged Mr. Chen suffered brain damage and died three days later as a result.

14.     Underlying plaintiffs claim that Beacon's willful disregard and failure to supervise Mr. Chen while he ate and to ensure he did not aspirate on food as required under his plan of care caused the "physical harm inflicted upon Mr. Chen," constitutes "abuse of an elder or a dependent adult" under California law, and "amounted to physical abuse, neglect, recklessness, oppression, fraud or malice."

15.     Underlying plaintiffs seek compensatory damages, as well as attorneys' fees and punitive and exemplary damages.

16.     As discussed further below, Arch is defending Beacon in the underlying *Chen* Lawsuit subject to a reservation of rights.

**B.     The Arch Policy**

17.     Arch issued Policy number FLP0052767-06 to Beacon for the policy period of December 20, 2018 to December 20, 2019.  The Policy includes, in pertinent part, Healthcare Professional Liability ("HPL") primary and umbrella coverage.  (A true and correct copy of the Policy is attached hereto as Exhibit B.)

18.     The Policy's Limit of Liability applicable to the primary HPL Coverage is $1 million each Occurrence and $3 million aggregate.

19. The HPL Coverage Insuring Agreement states:

> We will pay those amounts that the insured becomes legally required to pay as damages because of "medical professional injury" that results from acts or omissions in the providing of or failure to provide "health care professional services" by or for an insured.

20. "Medical professional injury" is defined under the Policy as "injury, including death, to others that results from acts or omissions in the providing of or failure to provide 'health care professional services' by or for an insured." "Health care professional services," as defined, includes "[m]edical, surgical, dental, x-ray, nursing, or other similar 'health care professional services' or treatments," and "[p]roviding or dispensing food, beverages, medications or medical supplies or appliances in connection with" the aforementioned services.

21. The HPL Coverage part includes an Abuse or Molestation exclusion, which precludes coverage for any "claim" that alleges "injury or damage that is in any way related to, in whole or in part, 'abuse or molestation'." "Abuse or molestation," as defined under the Policy, "includes but is not limited to any physical, mental, or moral harassment, assault or intimacy of a sexual nature even if consensual."

22. However, under the Professional Plus Endorsement to the Policy, the Abuse or Molestation exclusion is deleted from the HPL Coverage part, and the HPL Coverage part is modified to provide limited coverage for abuse or molestation claims.

23. Specifically, under Section E of the Professional Plus Endorsement, the following is added to the HPL Coverage part:

> We will defend any "claim" in any way related to, in whole or in part, "abuse or molestation".… We will also pay amounts that any insured becomes legally required to pay as damages.

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

The defense provided and damages paid under this coverage are subject to the abuse or molestation limits of insurance shown below.  Defense expenses and damages paid will reduce and may exhaust the limits of insurance as shown in the declarations.

Annual Aggregate Abuse Or Molestation Limit: $1,000,000

Each "Claim" Abuse Or Molestation Limit: $1,000,000

The annual aggregate abuse or molestation limit shown above is the maximum we will pay for all "claims" in any way related to, in whole or in part, "abuse or molestation", including the defense expense related to such "claims". This limit is part of, and not in addition to, the aggregate limit or the general aggregate limit specified in the declarations, whichever applies.

Subject to the annual aggregate abuse or molestation limit, the each "claim" abuse or molestation limit shown above is the maximum amount we will pay for any one "claim" in any way related to, in whole or in part, "abuse or molestation", including the defense expense related to such "claims".  This limit is part of, and not in addition to, the each medical incident limit or the each occurrence limit, whichever applies, specified in the declarations.

24.   Thus, under the primary HPL Coverage, a $1 million sub-limit of liability, which is eroded by defense expenses, applies to any "claim" in any way related to, in whole or in part, "abuse or molestation."

25.   As noted, the Policy also includes an HPL Umbrella Coverage.  The Policy's Limit of Liability applicable to the Umbrella Coverage is $1 million each Occurrence and $1 million aggregate.

26.   The Umbrella Coverage Insuring Agreement states:

We will pay on behalf of the insured the "loss" in excess of the "retained limit" because of "medical professional injury" that results from acts or omissions in the providing of or failure to provide "health care professional services" by or for an insured and to which this insurance applies.

27.   "Loss" is defined under the Policy as "the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent."

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

"Retained limit" is defined as "the available limits of 'underlying insurance' scheduled in the declarations." The scheduled underlying insurance relevant here is the Policy's primary HPL Coverage, noted above.

28.     "Medical professional injury" and "health care professional services" are defined the same as under the HPL Coverage part, noted above.

29.     The Umbrella Coverage part also includes an Abuse or Molestation exclusion, which precludes coverage for any "claim" or "loss" that alleges "injury or damage that is in any way related to, in whole or in part, 'abuse or molestation'." "Abuse or molestation" is defined the same as under the HPL Coverage part, noted above.

30.     The Professional Plus Endorsement described above does <u>not</u> apply to the Umbrella Coverage part. Accordingly, there is no limited coverage for abuse or molestation claims afforded under the Umbrella Coverage, and the Abuse or Molestation exclusion applies to preclude Umbrella Coverage for abuse or molestation claims.

31.     The Policy also contains a "cooperation" provision, which provides that Beacon and any other involved insured must "[c]ooperate with [Arch] in the investigation or settlement of the 'claim' or defense of the 'suit'." Additionally, "[n]o insured will voluntarily make a payment, assume any obligation or admit liability, incur any expense, or settle any 'claim' or 'suit' to which this coverage applies without [Arch's] consent."

### C.     Correspondence Between Arch and Beacon

32.     Arch was notified of the underlying *Chen* Lawsuit on April 25, 2019.

33.     On May 1, 2019, Arch issued a letter to Beacon advising that it would provide a defense for the *Chen* Lawsuit under the HPL Coverage part of the Policy, but because the *Chen* Lawsuit alleged elder abuse/neglect claims, it was subject to the $1 million sub-limit of liability, eroded by defense costs, for "abuse or molestation" claims under the Professional Plus Endorsement to that Coverage part,

and any amounts for defense or potential indemnity for the *Chen* Lawsuit exceeding the sub-limit would not be covered.  Additionally, Arch denied coverage for the *Chen* Lawsuit under the Abuse or Molestation exclusion applicable to the Umbrella Coverage part and reserved other rights under the Policy.  (A true and correct copy of the May 1, 2019 letter is attached hereto as Exhibit C.)

34.     During the underlying litigation, Arch issued four more letters to Beacon and in each: (a) reiterated that any amounts for defense or potential indemnity exceeding the eroding $1 million sub-limit for "abuse or molestation" claims would not be covered; (b) noted the amount of remaining available limits for defense and indemnity; and (c) invited Beacon's questions, concerns, and/or disagreement with Arch's coverage positions, if any.  Arch also advised Beacon of its statutory *Cumis* rights to elect independent counsel given plaintiffs' settlement demands.  (True and correct copies of Arch letters dated May 8, 2020, December 14, 2020, August 11, 2021, and January 14, 2022 are attached hereto as Exhibits D–G.)

35.     Beacon did not raise any questions, concerns, or disagreement with Arch's positions, and on August 16, 2021, Beacon's principal confirmed he understood Arch's positions.

36.     However, on or about January 21, 2022, three days before trial in the *Chen* Lawsuit was scheduled to begin, Beacon, through coverage counsel, requested for the first time that Arch reconsider it position on the $1 million sub-limit under the HPL Coverage Professional Plus Endorsement and its denial of coverage under the Umbrella Coverage part.

37.     Arch responded, maintaining its coverage positions and again authorizing its remaining available limits for defense and indemnity of Beacon.

38.     Beacon replied, maintaining its request for reconsideration and stating that Arch's "refusal to settle" above available limits was in bad faith.[1]

---

[1] Because the underlying Lawsuit is still pending, and Arch continues to provide a defense

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

# COUNT I

## (Declaratory Judgment – "Abuse Or Molestation" Provisions)

39.   Arch incorporates the allegations of the foregoing Paragraphs of this Complaint.

40.   This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Arch seeks a judicial determination of the rights and duties of the parties under the Policy.

41.   A real and actual controversy exists between Arch and Beacon concerning whether Arch is obligated to cover Beacon in the *Chen* Lawsuit for any defense and indemnity in excess of a $1 million sub-limit under the Policy.

42.   Specifically, Arch and Beacon dispute whether the underlying *Chen* Lawsuit alleges a claim or loss for "abuse or molestation" as defined under the Policy, and accordingly, whether the eroding $1 million sub-limit for "abuse or molestation" claims under the Professional Plus Endorsement of the primary HPL Coverage part, and the Abuse or Molestation exclusion under the Umbrella Coverage part, apply.

43.   The issuance of declaratory relief by this Court will resolve the existing controversy between the parties.

44.   Arch is entitled to a judicial declaration that it does not have a duty to pay any amounts in excess of $1 million for the defense or potential indemnity of Beacon in the *Chen* Lawsuit, because the eroding $1 million sub-limit for "abuse or molestation" claims under Professional Plus Endorsement to the HPL Coverage part applies.

45.   This conclusion is required by the plain language of the Policy.  As noted above, "abuse or molestation" under the Policy "includes but is not limited to

_____
to Beacon in the underlying Lawsuit subject to the positions and reservations stated herein, this late January 2022 correspondence is not attached hereto.  Moreover, this correspondence is in the possession of Beacon.

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

1  any physical, mental, or moral harassment, assault or intimacy of a sexual nature

2  even if consensual" (emphasis added).  The eroding $1 million sub-limit applies to

3  "any 'claim' in any way related to, in whole or in part, 'abuse or molestation'."

4       46.    As noted above, the underlying *Chen* complaint asserts claims for

5  "elder abuse" and neglect and includes allegations of physical and other abuse

6  inflicted upon Mr. Chen.  (emphasis added).  Thus, the underlying claims are, at the

7  very least, related to in part "abuse or molestation."  Accordingly, the eroding $1

8  million sub-limit for such claims under the Professional Plus Endorsement applies,

9  and there is no coverage owed to Beacon in connection with the *Chen* Lawsuit for

10  any defense and indemnity exceeding $1 million.

11       47.    Arch is also entitled to a judicial declaration that it does not have a duty

12  to defend or indemnify Beacon in the *Chen* Lawsuit under the HPL Umbrella

13  Coverage part of the Policy, because the claims and losses alleged in the *Chen*

14  Lawsuit are precluded from coverage by the "Abuse Or Molestation" exclusion

15  under the Umbrella Coverage part.

16       48.    This conclusion is required by the plain language of the Policy.  The

17  same "abuse or molestation" definition noted in the preceding paragraphs applies to

18  the Umbrella Coverage part.  Umbrella Coverage under the Policy does not apply to

19  any "claim" or "loss" that alleges injury "in any way related to, in whole or in part,

20  'abuse or molestation'."  As noted above, the underlying *Chen* complaint asserts

21  claims for "elder abuse" and neglect and includes allegations of physical and other

22  abuse inflicted upon Mr. Chen.  Thus, the underlying claims are, at the very least,

23  related to in part "abuse or molestation."  Accordingly, the exclusion for such claims

24  under the Umbrella Coverage part applies, and there is no Umbrella coverage owed

25  to Beacon in connection with the *Chen* Lawsuit.

26       49.    As noted, the underlying *Chen* Lawsuit is ongoing.  However, the

27  issues as described above, including the applicability of the "abuse or molestation"

28  provisions under the plain language of the Policy, present legal issues that do not

overlap in any manner with the liability issues to be resolved in the underlying Lawsuit.

## COUNT II

### (Declaratory Judgment – Breach of Cooperation Provision)

50.     Arch incorporates the allegations of the foregoing Paragraphs of this Complaint.

51.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Arch seeks a judicial determination of the rights and duties of the parties under the Policy.

52.     As a condition of coverage under the Policy, the insured must cooperate with Arch in its investigation or settlement of a claim and defense of a lawsuit.  Additionally, the insured must not settle any claim or suit to which coverage applies without Arch's consent.

53.     Beacon's recent statements and conduct toward Arch have undermined Arch's reasonable efforts to defend and respond to the underlying *Chen* Lawsuit, to Arch's prejudice and detriment.

54.     A real and actual controversy exists between Arch and Beacon concerning whether Arch is obligated to defend or indemnify Beacon for the underlying *Chen* Lawsuit, for any amount, in light of Beacon's breach of the Policy's cooperation provision.

55.     The issuance of declaratory relief by this Court will resolve the existing controversy between the parties.

56.     However, the underlying *Chen* Lawsuit is ongoing, and pending such a declaration from the Court or a subsequent notice from Arch, Arch continues to advance defense costs and to provide a defense to Beacon, subject to the eroding sub-limit and all other positions and reservation of rights described in this Complaint and Arch's correspondence to Beacon.  Arch accordingly expects and demands cooperation from Beacon and that it comply with its obligations under the

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

Policy.[2]

WHEREFORE, Arch respectfully requests that this Court enter an order:

    a.    Declaring that Arch does not have a duty to pay any amounts for Beacon's defense and indemnity for the *Chen* Lawsuit in excess of the $1 million sub-limit for "abuse or molestation" claims under the Professional Plus Endorsement of the HPL Coverage part of the Policy; and

    b.    Declaring that Arch does not have a duty to defend and indemnify Beacon for the *Chen* Lawsuit under the HPL Umbrella Coverage part of the Policy; and

    c.    Declaring that Arch does not have a duty to defend and indemnify Beacon for the *Chen* Lawsuit because Beacon breached the Policy's cooperation provision; and

    d.    Awarding such further relief as the Court deems appropriate.

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

---

[2] Additionally, because the underlying *Chen* Lawsuit is pending and Arch continues to provide a defense to Beacon subject to the positions and reservations noted above, Arch would agree to a stay of Count II pending resolution of the underlying *Chen* Lawsuit. For the avoidance of doubt, Arch would agree to a stay <u>only</u> as to Count II; Arch does not maintain that Count I should be stayed and would not also agree to a stay of Count I.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC

DATED:  February 24, 2022          By: / s / Paul H. Burleigh
                                        Paul H. Burleigh
                                        Attorneys for Plaintiff
                                        ARCH SPECIALTY INSURANCE
                                        COMPANY

                                        Ronald P. Schiller
                                        (application for *pro hac vice* admission to be
                                        submitted)
                                        Daniel J. Layden
                                        (application for *pro hac vice* admission to be
                                        submitted)

KLINEDINST PC
777 S. FIGUEROA ST., SUITE 4000
LOS ANGELES, CALIFORNIA 90017

COMPLAINT